IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ARISH RUSTAMI, )
 )
              Petitioner, )
 )
v. ) Case No. 25-3160-JWL
 )
KRISTI NOEM, Secretary, )
  Department of Homeland Security; )
TODD M. LYONS, Acting Director, )
  U.S. Immigration and Customs Enforcement; )
SAM OLSON, Field Office Director, )
  U.S. Immigration and Customs Enforcement; )
PAMELA BONDI, Attorney General, )
 )
             Respondents. )
 )
_____)

## MEMORANDUM AND ORDER

Petitioner, through counsel, filed a petition for habeas corpus under 28 U.S.C. § 2241, by which he challenges his detention by immigration officials. For the reasons set forth below, the petition is **granted in part and denied in part**. The petition is granted with respect to petitioner's claim that he was improperly denied an interview, and respondents are hereby ordered to ensure that such an interview of petitioner takes place on or before **January 16, 2026**. The petition is otherwise denied.

Petitioner is a native and citizen of Iran who was admitted to the United States in 2004. In 2010, petitioner was convicted in Missouri state court of possession of child pornography, and immigration officials initiated removal proceedings. On March 3, 2011, petitioner's removal was ordered, but petitioner was granted withholding of removal to

Iran, meaning that he could only be removed to an alternative third country. On June 30, 2011, petitioner was released from custody subject to an order of supervision (OSUP). On June 23, 2025, petitioner was again taken into custody by immigration officials, and his supervised release was revoked.

Petitioner claims that his continued detention by immigration authorities is improper. To obtain habeas corpus relief, petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241(c)(3). This Court has habeas corpus jurisdiction to consider the statutory and constitutional grounds for immigration detention that are unrelated to a final order of removal. *See Demore v. Kim*, 538 U.S. 510, 517–18 (2003).

Generally, when an alien is ordered removed, the removal is to occur within a period of 90 days, referred to as the "removal period." *See* 8 U.S.C. § 1231(a)(1)(A). Petitioner claims that because six months have now elapsed since the beginning of the removal period, his detention has become unreasonably indefinite, and that his release is therefore required under the framework set forth by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).

In *Zadvydas*, the Supreme Court noted that an alien must be detained during the 90-day removal period and that the Government may continue to detain an alien after that period or release the alien under supervision. *See id.* at 683 (citing 8 U.S.C. § 1231(a)(2), (6)). The Court held, however, that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by the statute." *See id.* at 699. The Court elaborated on that standard as follows:

> In answering that basic question, the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions. . . .
>
> We recognize, as the Government points out, that review must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to "speak with one voice" in immigration matters. But we believe that courts can take appropriate account of such matters without abdicating their legal responsibility to review the lawfulness of an alien's continued detention.

*See id.* at 699-700 (citations omitted). The Supreme Court then established a presumptively reasonable detention period of six months in which to accomplish removal, after which the reasonableness of an alien's detention should be determined as follows:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*See id.* at 701; *see also, e.g.*, *Anyimu v. Department of Homeland Security*, 2017 WL 193180, at *2-3 (D. Kan. Jan. 18, 2017) (Lungstrum, J.) (applying this framework); *Kaliku v. United States Immigration and Customs Enforcement*, 2024 WL 4854523, at *2-3 (D.

3

Kan. Nov. 21, 2024) (Lungstrum, J.) (same); *Vargas v. Noem*, 2025 WL 2770679, at *2-3 (D. Kan. Sept. 29, 2025) (Lungstrum, J.) (same).

Applying this framework, the Court concludes that petitioner has not met his burden to show that there is no significant likelihood of his removal in the reasonably foreseeable future. The mere fact that the requisite six months have now elapsed is not sufficient to meet that burden. *See Zadvydas*, 533 U.S. at 701 ("This 6-month presumption, of course, does not mean that every alien not removed must be released after six months."). Moreover, petitioner does not contend that officials have made no efforts to remove him to a third country, and respondents have provided evidence that they have attempted to obtain a travel document for petitioner from at least one alternative third country (albeit unsuccessfully). In light of those efforts and the fact that petitioner's detention has lasted only slightly longer than six months since the beginning of the removal period, the Court cannot find that petitioner's detention has become unreasonably indefinite under the applicable framework, and the Court therefore denies that claim.[1]

---

[1] Petitioner argues that *Zadvydas* requires release if removal is not reasonably foreseeable, but in that case the Supreme Court also held that a period of six months in which to accomplish removal is presumptively reasonable, and it adopted the framework that the Court has applied here. Petitioner also argues that any such six-month period elapsed long ago, as his initial removal period ended in 2011. The Court has consistently held, however, that the six-month period for the purpose of applying the *Zadvydas* framework restarts when an alien is taken into custody after previously having been released. *See Abedi v. Carter*, 2025 WL 3209009, at *1 (D. Kan. Oct. 6, 2025) (Lungstrum, J.) (citing *Liu v. Carter*, 2025 WL 1207089, at *2 (D. Kan. Apr. 25, 2025)), *appeal filed* (10th Cir. Oct. 6, 2025). Petitioner argues that the Court has erred in so ruling, but he cites no authority for the contrary position, and the Court therefore declines to reconsider that ruling. Petitioner suggests that government officials could manipulate that ruling by repeatedly detaining and releasing an alien, but any such manipulation may be addressed if it occurs (it has not occurred in this case).

Petitioner also claims that his due process rights have been violated because he has not been given notice of any intent to remove him to a particular third country and has not had the opportunity to assert a claim of fear of persecution or torture to immigration officials and then to an immigration judge.  Petitioner asks the Court to enjoin his removal to a third country without such notice and an opportunity to assert a credible-fear claim to officials and to an immigration judge and an opportunity to seek an order of withholding to that country.[2]

The Court rejects this claim and denies the relief requested.  First, the Court agrees with respondents that any such claim of a due process violation is premature.  Petitioner has not shown that officials have declared any intent to remove him to a particular third country, and thus officials have not denied any process due him with respect to any opportunity to object to such a removal.  Petitioner notes that officials have explored removal to Afghanistan or Pakistan, but, again, officials have not indicated that they intend to remove petitioner to either country.  Thus, petitioner has not shown that any due process violation has yet occurred.  Nor has petitioner shown any likelihood that officials will not give him the opportunity to object once he receives notice of an intent to remove him to a particular country.

Moreover, as the Court has concluded in a similar case, petitioner's apparent membership in a class certified in another case makes the requested relief inappropriate.  *See Manago v. Carter*, 2025 WL 2576755, at *2-3 (D. Kan. Sept. 5, 2025) (Lungstrum, J.)

---

[2] In his subsequent filings, petitioner abandoned his initial request for an order enjoining removal to Iran based on the withholding order.

5

(citing *D.V.D. v. United States Dept. of Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass.), *appeal filed* (1st Cir. Apr. 22, 2025), *stay granted*, 145 S. Ct. 2153 (June 23, 2025)). Petitioner has not addressed that conclusion by the Court in *Manago*, and thus he has not shown that a different outcome is appropriate in this case.

Petitioner also claims that officials violated applicable regulations, specifically 8 C.F.R. §§ 241.4, 241.13, by failing to give him notice of the reasons for the revocation of this supervised release and by failing to grant him an interview as required.[3] First, those regulations provide that an alien shall be notified "upon revocation" of the reasons for the revocation of release. *See* 8 C.F.R. §§ 241.4(*l*)(1), 241.13(i)(3). On June 23, 2025, petitioner was detained, and immigration officials issued a Notice of Revocation of Release, which stated that his release was being revoked because of changed circumstances and a determination that he could be expeditiously removed; and respondents have submitted evidence that that notice was served on petitioner four days later, on June 27, 2025. Petitioner does not dispute that he received the notice on June 27. Nor does he argue expressly that this notice was not sufficient to meet the regulations' notice requirement.[4] Petitioner instead appears to argue that he was entitled to receive this notice prior to the revocation. The Court rejects this argument, for which petitioner has cited no authority, as

---

[3] Petitioner also claims in his petition that his release could only be revoked because of a violation of the terms of his release, but he has abandoned any such claim in his subsequent briefs. Such a claim lacks merit at any rate, as the regulations plainly provide for revocation for other reasons. *See* 8 C.F.R. §§ 241.4(*l*)(2), 241.13(i)(2); *see also Abedi*, 2025 WL 3209009, at *1 (rejecting similar argument).

[4] The regulations do not require a hearing prior to or after revocation, *see* 8 C.F.R. §§ 241.4(*l*)(2), 241.13(i)(2), and petitioner has abandoned his initial argument that officials also violated the regulations by failing to provide a hearing.

6

the regulations require notice only "upon revocation," and thus not prior to revocation. In addition, petitioner has not identified any prejudice that he suffered because he received the notice four days after he was detained based on the revocation. Petitioner argues that an alien must have notice of the reasons for revocation so that he may object when given the opportunity to do so; but petitioner has not identified any such opportunity (such as an interview) that occurred in those first four days. Accordingly, the Court denies petitioner's claim based on the regulations' notice requirement.

The regulations also state that an alien will be afforded an informal interview promptly upon his return to custody "to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *See id.* Respondents do not dispute petitioner's claim that no such interview took place; accordingly, the Court finds that officials did violate the applicable regulations in that regard. Moreover, respondents do not argue that petitioner cannot show prejudice from that violation.[5] *Cf. Qui v. Carter*, 2025 WL 2770502, at *2 (D. Kan. Sept. 26, 2025) (Lungstrum, J.) (rejecting claim based on the lack of an interview, as the petitioner had not shown any particular prejudice and had had ample opportunity to make arguments in the habeas litigation).[6]

---

[5] Respondents argued in their supplemental response brief that petitioner had suffered no prejudice because he had received an interview on September 12, 2025. After petitioner disputed that an interview had taken place on that date, respondents filed a notice in which they conceded that petitioner was not given the opportunity to contest his detention on that date, and in which they therefore withdrew their argument that petitioner could not show prejudice from any violation of the interview requirement.

[6] In *Qui*, the Court concluded that officials had violated the regulations by revoking the petitioner's release without a proper determination of changed circumstances. *See Qui*, 2025 WL 2770502, at *3-4. Petitioner has not asserted that particular claim in this case.

7

The Court further concludes, however, that this violation does not warrant petitioner's release; rather, the appropriate remedy is substitute process. *See Olmedo v. United States Immigration and Customs Enforcement*, 2025 WL 2821860, at \*3 (D. Kan. Oct. 3, 2025) (Lungstrum, J.) (citing cases in concluding that substitute process was the appropriate remedy for a violation of the regulations that was not necessarily harmless). Petitioner relies on *Cifuentes Rivera v. Arnott*, No. 25-570 (W.D. Mo. Oct. 7, 2025), in which the court ordered the petitioner's release because of violations of the regulations' notice and interview requirements. *See id.* In that case, however, the Government limited its arguments to the issue of jurisdiction, and thus the court did not discuss the issue of an appropriate remedy (and so granted the petition in which release was requested). *See id.* In this case, the Court concludes, as it did in *Olmedo*, that the violation is most appropriately remedied by ensuring that petitioner does receive the process that he was denied. Accordingly, the Court grants the petition to that extent, and respondents are hereby ordered to ensure that petitioner is granted his informal interview mandated by the regulations on or before January 16, 2026.

Finally, the Court rejects petitioner's discovery requests. A habeas petitioner is not entitled to discovery as a matter of course, although a court may in its discretion grant leave to conduct discovery for good cause shown. *See Bracy v. Gramley*, 520 U.S. 899, 904 (1997) (citing Rule Governing § 2254 cases, Rule 6(a)). Good cause may be shown if specific allegations provide a reason to believe that if facts are fully developed, the petitioner may be able to demonstrate an entitlement to relief. *See id.* at 908-09 (citing *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

The Court in its discretion concludes that discovery is not warranted here. Petitioner requests records relating to the alleged interview of petitioner on September 12, 2025, arguing that such records are needed in light of a factual dispute concerning whether an interview occurred on that date. There is no longer such a factual dispute, however, as respondents have withdrawn their argument based on an interview on that date. Petitioner also requests documents relating to officials' efforts to obtain travel documents from third countries. The Court assumes, however, that officials have not made additional efforts to remove petitioner that are not documented in the declarations submitted by respondents; and petitioner has not adequately shown that the actual language of the communications concerning an *unsuccessful* request to one country could alter the Court's conclusion that petitioner has not met his burden under *Zadvydas* at this time, after only six months in custody.

IT IS THEREFORE ORDERED BY THE COURT THAT the petition for habeas corpus pursuant to 28 U.S.C. § 2241 is hereby **granted in part and denied in part**. The petition is granted with respect to petitioner's claim that he was improperly denied an interview, and respondents are hereby ordered to ensure that such an interview takes place on or before **January 16, 2026**. The petition is otherwise denied.

IT IS SO ORDERED.

Dated this 30th day of December, 2025, in Kansas City, Kansas.

/s/  John W. Lungstrum
Hon. John W. Lungstrum
United States District Judge